[LANCASTER, JUNE 1, 1829.]

The COMMONWEALTH, for the use of MISHEY and others, *against* BRENNEMAN and another, Administrators of BRENNEMAN.

### IN ERROR.

In an action on a recognisance entered into in partition, in which the plea is a release, and the replication, that the release was without consideration, fraudulent, and void, evidence is not admissible under the replication, to show, that though the release was expressed to be for a full consideration, none was paid; and that, to induce the releasors to execute the instrument, the releasee artfully and fraudulently represented, that if they would execute it he would pay them afterwards, and that the administrators of the releasee retained in their hands money to meet the claim of the releasors.

Nor is evidence admissible to show, (where third persons are interested,) that the release was induced by the purchaser of the share of one of the heirs refusing to pay without a release from all the heirs: That they agreed to meet his wishes, upon his paying only the purchase money of the share he had bought: That there was an understanding among the heirs, that the release was to operate only in favour of the purchaser; and that among themselves, though absolute in form, it was to remain inoperative until those who took the land at the appraisement, paid to each of the heirs their share of the valuation money.

On a general allegation of misrepresentation and fraud, a party may be compelled to specify the evidence on which he relies to establish fraud.

ON the return of a writ of error to the District Court for the city and county of *Lancaster*, it appeared from the three bills of exceptions which came up with the record, that this was an action of debt on a recognisance, brought in the name of the Commonwealth, for the use of *Jacob Mishey, Samuel Basler, Michael Brenneman*, jr., and *Thomas Eagar*, assignees of *Christian Longenecher*, jr., administrator of *Feronica Longenecher*, deceased, late wife of said *Christian*, and who was a daughter of *Henry Brenneman*, deceased, against *John Brenneman* and *John Jack*, administrators of *Henry Brenneman*, the younger, deceased, with notice to *Elizabeth Brenneman*, widow of the said *Henry Brenneman*, the younger, and *John Brenneman*, terre-tenants.

The defendants pleaded " a release and payment;" &c., to which the plaintiffs replied, " release without consideration, fraudulent, and void, *non solverunt* and issue."

On the trial, after the plaintiffs had given in evidence the record of an inquisition in partition, the recognisances entered into by *Henry Brenneman*, the younger, and others, and other evidence necessary to make out their case, the defendants examined *John Brandt*, who, after having proved the execution of the release, to which he was a subscribing witness, testified as follows:—" It (the release,) was done at *Jacob Barr's* house, in *Maytown; Abraham Schock* had purchased the land of old *Brenneman's* son, *Jacob*,

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and another, Administrators of Brenneman.)

the share which he took, and he paid five or six thousand dollars on the table, to the parties to the release. It was paid on the lump, and they were to divide it as they pleased. *Christian Longenecher* got some money. Do not know that *Henry Brenneman* paid any money for his share. *Schock* would not pay any money till all released. I don't know that *Henry Brenneman* paid any money at that time—not a dollar paid at that time, except what *Abraham Schock* paid." The defendants then gave in evidence a release from *Christian Longenecher* and wife to *Henry Brenneman*, the younger, dated the 1st of *April*, 1819, when the plaintiffs made the following offer of evidence:—"The plaintiffs, in support of their replication to the plea of a release, that it was without consideration, fraudulent, and void, offer to prove, in addition to the testimony and evidence already given, that the release was procured by *Henry Brenneman*, to be drawn before the time of execution, as executed for full consideration, when he had not the consideration money to pay: That to induce *Christian Longenecher* and wife to execute the release, he artfully, and fraudulently represented, that they should execute the release without receiving the purchase money; that he would pay them the money afterwards, and that they might rely on his doing so if they would release: That they, *Christian Longenecher* and wife, relying on the assurances so given, executed the release, without receiving any consideration therefor: That not a cent of the consideration of the said release was ever paid: That *Henry Brenneman* died in *July*, 1822: That notice was given to his administrators of this claim, and that they have retained the amount of this claim, and now have it in their hands; and that on the same day, and immediately after the execution of the release by them, *Henry Brenneman* told *Christian Longenecher*, that he had some claim against his wife, and that he should come to his house shortly, and would settle and satisfy him, which he never did do."

The counsel for the defendants having objected to the evidence thus offered, the court sustained their objection, and sealed the first bill of exceptions.

After the evidence, offered as above, had been rejected, the plaintiffs offered to prove, "That the release given in evidence by the defendants, was induced by the purchaser of *Jacob's* share refusing to pay without a release being executed by all the heirs, and that the heirs of *Henry Brenneman*, the elder, agreed to meet the wishes of the purchaser, by executing the release upon his paying the purchase money of the share he had bought, which was assigned to *Jacob*, under a full understanding amongst themselves, that it was to operate in favour of the purchaser only; and that, as amongst themselves, as the heirs who had taken land at the appraisement, were not then prepared to pay the purparts belonging to the other heirs, the release, *though in form absolute, was to be, and re-*

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and another, Administrators of Brenneman.)

*main inoperative, until the persons taking the lands, paid to* *each of the heirs, their share in the valuation money:* That under this understanding, mutually entertained and agreed to by all the heirs, the release was executed, upon the payment of the money by Mr. *Schock* only: That *Henry Brenneman,* the son, did not pay any thing to any of the heirs, on executing the release, but agreed to do so, notwithstanding the release, at a subsequent time: That payments were made by *Henry Brenneman,* in his life time, to all the heirs but *Christian Longenecher* and *Feronica,* his wife, to whom not a cent has ever been paid of her share in the land taken by her brother, *Henry Brenneman.*" The defendants objected to the evidence offered, and the court would not permit it to be given; upon which the second bill of exceptions was tendered by the plaintiffs' counsel, and sealed by the court.

From the third bill of exceptions, it appeared, that the plaintiffs having produced a witness, the defendants' counsel called upon them to state in writing the evidence intended to be given; and the court having sustained the requisition, the plaintiffs' counsel offered to prove, "That at the time of the execution of the release, given in evidence by the defendants, no part of the consideration money (being the share coming to *Feronica,* the wife of *Christian Long- genecher,* on the valuation,) was paid by her brother, *Henry Bren- neman;* but that the said *Christian Longenecher,* and *Feronica,* his wife, were induced by the said *Henry Brenneman,* to execute the said deed, without receiving the consideration money, by the fraud and contrivance of the said *Henry,* artfully, and falsely imposed upon them, by false representations made to them on the day, and at the time of the execution of the said deed by them, which inspired them with a confidence in his representations, that was betrayed; and that the said *Henry Brenneman,* who took the land at the appraisement, died in *July,* 1822." The counsel for the defendants objected to this offer, and the admission of evidence under it, as not containing a statement of any facts, acts, or conversations intended to be given in evidence, but merely a general allegation, that fraud, contrivance, and falsehood, were practised by *Henry Brenneman,* relative to the release, and as not being a compliance with the requisition of the court, nor with the rules and practice of courts, in requiring a party, when requested by the opposite party, to reduce to writing the testimony offered. It was likewise objected to, as being irrelevant to the issue; but no objection was made to proving the time of *Henry Brenneman's* death.

The court decided, that evidence should be received to show, that the release was obtained by mistake, fraud, or *misrepresenta- tion:* That to enable the court to decide on the competency and admissibility of the evidence, the plaintiffs should, in their offer, specify the evidence by which they sought to establish these matters; which not being done, the court rejected so much of the evi-

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and another, Administrators of Brenneman.)

dence offered, as was objected to by the defendants' counsel, and admitted the residue. To this opinion of the court the plaintiffs' counsel excepted.

On the argument in this court, *Jenkins* and *Hopkins* for the plaintiffs in error, cited 2 *Bl. Com.* 300. 7 *John. Ch. Rep.* 102. 2 *John. Ch. Rep.* 35. 1 *Madd. Ch.* 263. *Hamilton* v. *M'Guire's Executors,* 3 *Serg. & Rawle,* 355. *Miller* v. *Henderson,* 10 *Serg. & Rawle,* 290. *Hain* v. *Kalbach,* 14 *Serg. & Rawle,* 159. 10 *Mass. Rep.* 456. *Christ* v. *Diffenbach,* 1 *Serg. & Rawle,* 464. *Broderick* v. *Broderick,* 1 *P. Wms.* 239.

*Evans* and *Ellmaker* for the defendants in error, cited *Wentz* v. *De Haven,* 1 *Serg. & Rawle,* 317. *Coe* v. *Hutton,* 1 *Serg. & Rawle,* 398. *Heilner* v. *Imbrie,* 6 *Serg. & Rawle,* 411. *Cozens* v. *Stevenson,* 5 *Serg. & Rawle,* 424. *Iddings* v. *Iddings,* 7 *Serg. & Rawle,* 114. 11 *Mass. Rep.* 347. *Wolverton* v. *The Commonwealth,* 7 *Serg. & Rawle,* 273.

The opinion of the court was delivered by

Rogers, J.—This was an action of debt on recognisance, to which the defendants pleaded payment and release. Replication, release without consideration, fraudulent and void, *non solverunt* and issues. To maintain the replication, the plaintiffs offered to prove, " that *Henry Brenneman* procured the release to be drawn before the time of execution, as executed for full consideration, when he had not the consideration money to pay: That to induce *Christian Longenecher* and wife to execute the release, he artfully and fraudulently represented, that they should execute it without receiving the purchase money: That he would pay them afterwards, and that they might rely upon his so doing, if they would release: That *Christian Longenecher* and wife, relying on the assurances so given, executed the release, without receiving one cent of consideration: That *Henry Brenneman* died in *July,* 1822, and that upon notice being given to his administrators, they have retained the amount of the claim, and now have it in their hands: That on the same day, or immediately after, *Henry Brenneman* told *Christian Longenecher* that he had some claim against his wife: That he should come to his house shortly, and would settle with and satisfy him, which he never did."

It appears that *Abraham Schock,* who had purchased the share taken by *Jacob,* at the appraisement of the real estate of his father, *Henry Brenneman,* refused to pay the purchase money, unless all the heirs would execute releases. In pursuance of this family arrangement, and to accommodate a relative, they agreed to execute them, and to substitute a promise to pay at a future day. This, it is contended, supports the replication of fraud and want of consideration. Without resorting to the technical importance attached to an instrument under seal, here was a sufficient consideration to sup-

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and another, Administrators of Brenneman.)

port an action on the promise to pay. By the contract, which the parties had an undoubted right to make, one species of debt is substituted for another. In a suit on the promise, *Henry Brenneman* could not defend himself upon the allegation of a want of consideration. Such a transaction as this is by no means uncommon, where, by the release of an heir, you enable another to dispose of his property, which he would otherwise be unable to effect. If *Christian Longenecher* and wife have lost their share of the estate, it is certainly a misfortune, but one, however, of their own choosing; and I am at a loss to see any thing in the transaction, which supports the replication of fraud. The court excluded the testimony, because not supporting the issue; it could have no legal effect. The amount of the plaintiffs' offer is, to prove a non-compliance with the contract of *Henry*, that he would pay the amount of *Christian Longenecher's* wife's share, in consideration of the execution of the release, and for this the law has provided him his appropriate remedy. There is no doubt, that in the breach of promise, *Henry Brenneman*, in a moral point of view, was guilty of fraud; but it was no more fraudulent than any other breach of trust, or of promise. There was no false represention, or concealment of any existing fact, which constitutes the legal idea of fraud; for there is no doubt, (at least the contrary is not alleged,) he religiously intended to perform his part of the contract, but was prevented by the pressure of misfortune, or some casualty, which usually occurs in cases of those who are unable to comply with their engagements. There is no pretence to say, that he used any surreptitious or undue means to obtain the release, or that he practised such acts, or made use of such false tokens or finesse, as usually lay the foundation of an action of deceit. *Boyd* v. *Stone*, 11 *Mass. Rep.* 347. If a man purchase a horse, on a promise to pay in three days, a failure to pay at the time does not annul the contract, and revest the right of property; but the remedy is a suit for the purchase money. Nor here, can the non-compliance of *Henry Brenneman*, with his part of the contract, remit the parties to their original rights, for by the release, the recognizance is extingished. It is impossible to avoid seeing, that this is a contest among creditors. *Henry Brenneman* is dead, and I presume his estate insolvent; as, otherwise, the case is not worth pursuing, for the assignees would have the same relief in a suit on a simple contract as on the recognisance; for the debt remains, if not already paid, although the recognisance be extinguished.

In connexion with the evidence contained in the first bill of exceptions, the plaintiffs further offered to prove, that the release given in evidence by the defendants, was induced by the purchaser of *Jacob's* share refusing to pay without a release being executed by all the heirs; and that they agreed to meet the wishes of the purchaser, by executing the release, upon his paying the purchase

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and
another, Administrators of Brenneman.)

money of the share he had bought: That there was a full under-
standing among the heirs, that it was to operate in favour of the
purchaser only; and that, as among themselves, the release, though
in form absolute, was to be, and remain inoperative, until the per-
sons taking the land, paid to each of the heirs their share in the
valuation money: That under this understanding and agreement
between the heirs, the release was executed, upon the payment of
the money by Mr. *Schock* only: That *Henry Brenneman* did not
pay any thing to any of the heirs, when the release was executed,
but that payments have been made to all the heirs but *Christian
Longenecher* and wife, to whom no part of her share has been
paid.

Whether a Court of Chancery would set up this parol agreement,
so as to consider the release operative against *Henry Brenneman*
and his heirs, it is not necessary to decide. It is, however, very
clear, that a chancellor would not interpose where the rights of
third persons would be affected. It would be a sufficient answer
to a bill for relief, that the interest of others was concerned, whether
they were judgment or simple contract creditors, purchasers, or
terre-tenants of the land. There is no difficulty in perceiving the
object in view, in the course pursued by the plaintiffs. If they
could sustain their suit on the recognisance, they would have a lien
on the fund substituted for the land, and now in the hands of the
administrators, and this to the exclusion of the other creditors.
Equity does not favour secret agreements, at the expense of those
who neither know, nor have an opportunity of knowing of their
existence; and we have ever been, and I trust, ever will be, ex-
tremely cautious in giving effect to secret *family arrangements*,
except as against the parties themselves, or those who may be cog-
nisant of the nature of the transaction.

The next bill of exceptions raises the question, whether, on a ge-
neral offer to prove misrepresentation and fraud, a party can be
compelled to specify the evidence on which he relies, to establish
fraud. A history of this case presents a strong argument in favour
of the power of the court; and indeed, of its necessity, in prevent-
ing the waste of time in hearing testimony, which, if permitted to
be given, can have no effect, but in perplexing and bewildering the
jury. The plaintiffs had made two specifications of matters, which
they alleged, supported the replication, and these were adjudged,
and rightly, as insufficient for that purpose. They then make an
offer, in as general terms as possible, by which they seek to do that
indirectly, which they had been prevented from doing directly. If
this can be done, the decision of the court may at any time be
avoided, by the use of general terms, which give in truth no in-
formation to the court, and which do not enable them to judge of
the relevancy of the testimony, which is their exclusive province.
Had the plaintiffs undertaken to set out the evidence, we are

(The Commonwealth, for the use of Mishey and others, *v.* Brenneman and another, Administrators of Brenneman.

warranted in believing it would have contained but a repetition of what had already been passed on by the court, and adjudged incompetent. It would be but a mockery of the authority of the court, to suffer its decisions to be evaded in this way. This attempt, by which counsel endeavour to take from the court their legitimate authority, and go to the jury, on vague and indefinite notions of the justice or hardship of a particular case, has been often made, and as often resisted. It has been argued, that witnesses sometimes refuse, except in court, to disclose the evidence which they intend to give. This does sometimes happen, but this is so rare an occurrence, as not to deserve the importance which has been attached to it by the counsel who concluded the argument for the plaintiffs in error. It is, however, a sufficient answer to this argument, that this does not appear to be the reason the plaintiffs refused to comply with the directions of the court. When a witness refuses to disclose his knowledge, and the refusal of a party to specify the evidence on which he relies proceeds from inability, and not design, he will then be in time to claim the benefit of an exemption from the rule, under the special circumstances of his case.

Judgment affirmed.