**SEMBAWANG SHIPYARD, LTD.,**
Plaintiff-Appellee, Cross–
Appellant,

v.

**CHARGER, INC., and M/V CHARGER,**
Defendants-Appellants, Cross–
Appellees.

No. 91–3195.

United States Court of Appeals,
Fifth Circuit.

March 16, 1992.

James L. Schupp, Jr., Terriberry, Carroll & Yancey, New Orleans, La., for defendants-appellants, cross-appellees.

Cecil Gordon Starling, Jr., Gelpi, Sullivan, Carroll & Laborde, New Orleans, La., Peter Skoufalos, Chalos, English & Brown, New York City, for plaintiff-appellee, cross-appellant.

Before REYNALDO G. GARZA, GARWOOD, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Sitting in admiralty, we face a number of questions involving maritime jurisdiction, both in personam and in rem, as well as issues of international law and arbitration. We hold that the parties contracted for Singapore law to govern all disputes arising from this transaction. We further hold that the Plaintiff improperly arrested the Vessel under Supplemental Rule C. The Plaintiff could have attached the Vessel

under Supplemental Rule B, however, and we will allow it to reach the ship's bond in spite of Plaintiff's technical mistake; the Defendant can show no prejudice in this case. We also hold that the conversion date for the money judgment should have been the date of judgment rather than the day of breach.

Thus, we disagree with some of the reasoning of the district court. We affirm the judgment for the shipyard, however, and remand with instructions to modify the judgment so that the conversion rate on the date of judgment is applied.

## I.

The parties do not dispute any facts before this Court. The Plaintiff, Sembawang Shipyard, Ltd., a Singapore corporation, performed various repairs at its Singapore yard on the M/V Charger,[1] which was owned by Charger, Inc., a Liberian corporation. The details of the work and the terms of payment are governed by a contract between Sembawang and Charger. After paying several installments, Charger defaulted.

On November 11, 1988, Sembawang filed this collection suit in the Eastern District of Louisiana, where the M/V Charger was calling at the time, against the M/V Charger in rem and against Charger, Inc. in personam. In its verified Complaint, Sembawang invoked the maritime jurisdiction of the district court, and it moved that the Vessel be arrested pursuant to Supplemental Rule C.[2] The district court issued an arrest warrant under Rule C, and the marshal seized the Vessel. Charger, Inc. filed a claim of owner on November 14 and secured the release of the Vessel by posting a bond.

On December 20, Charger moved for a post-seizure hearing, which was held on January 11, 1989, and further motion practice by both parties followed. On August 16, the district court granted Sembawang's motion to stay proceedings pending arbitration, which the contract required, and the court retained jurisdiction to enter the arbitral award as its judgment. On July 16, 1990, the arbitrator rendered an award for Sembawang, whereupon Charger and Sembawang moved the district court to lift the stay. Charger moved that in personam service of process be quashed, and Sembawang moved that the arbitral award be confirmed. On November 9 the district court granted Charger's motions, but reversed itself on reconsideration. On January 31, 1991, the district court confirmed the arbitral award, and it entered judgment for Sembawang against the M/V Charger and against Charger, Inc. on April 12. The district court used the date of breach to convert the award from Singapore dollars to United States dollars.

Both parties appeal. Sembawang asks only that we use the exchange rate on the date of judgment to convert the arbitral award. Charger asks that this suit be dismissed for lack of jurisdiction and that the bond be vacated. We address the claims of both parties in turn. Because all of the issues before us present questions of law, our review is plenary. *Dow Chem. Co. v. M/V ROBERTA TABOR*, 815 F.2d 1037, 1042 (5th Cir.1987).

## II.

First we must decide whether to apply the law of the United States or the law of Singapore. The resolution of this issue is crucial to our analysis. If United States law applies, Sembawang would hold a maritime lien against the M/V Charger, and the right to proceed in rem against the Vessel under Supplemental Rule C(1)(a) would be undisputed. If Singapore law applies, we would be required to explore complex, not to say arcane, questions of Singapore admiralty law, and we would have to decide how that law affects the procedural rights available in a United States admiralty court.

We conclude that the parties bound themselves to be governed by Singapore law. Their contract regulating the underlying transaction provides that "[a]ny

---

1. We refer to the company as Charger and to the Vessel as the M/V Charger or the Vessel.

2. *See generally* Supplemental Rules for Certain Admiralty and Maritime Claims, which supplement the Federal Rules of Civil Procedure.

dispute shall be determined according to the Arbitration Ordinance 1963. The contract shall be governed by the Law of Singapore." Sembawang Shipyard Limited, Standard Conditions of Contract ¶ 10, 1 R. 297. Clauses such as this one are presumptively valid. *See Carnival Cruise Lines v. Shute,* — U.S. —, —, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622 (1991). "There are compelling reasons why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." *M/S BREMEN v. Zapata Off-Shore Co.,* 407 U.S. 1, 12–13, 92 S.Ct. 1907, 1914–15, 32 L.Ed.2d 513 (1972) (footnote omitted).

Sembawang concedes that Singapore law governs the in personam claim, which Sembawang agrees arises from the contract. It argues, however, that although the contract is governed by Singapore law, the forum court should apply United States law to determine whether Plaintiff holds a maritime lien for purposes of in rem jurisdiction. We disagree. Two Supreme Court cases on this subject are instructive. In *The Bremen,* the parties agreed that "[a]ny dispute arising must be treated before the London Court of Justice." *Id.* at 2, 92 S.Ct. at 1909. The Court held that this clause covered both actions in rem and in personam. *Id.* at 20, 92 S.Ct. at 1918. It distinguished the language in an earlier case, in which the parties agreed only that "no legal proceedings may be brought *against the Captain or Shipowners or their Agents*" except in Genoa; the parties did not agree that actions against the vessel had to be brought in Genoa. *THE MONROSA v. Carbon Black Export, Inc.,* 359 U.S. 180, 182, 79 S.Ct. 710, 712, 3 L.Ed.2d 723 (1959) (5–4 decision dismissing certiorari) (emphasis added).

The language in the contract before us is more akin to the language used in the contract in *The Bremen.* The Sembawang contract contemplates that "[a]ny dispute" arising from this transaction will be governed by Singapore law. The contract makes no distinction between actions against persons and actions against things,

unlike the contract in *The Monrosa.* We therefore hold that Singapore law determines Sembawang's rights against the Vessel in rem as well as Sembawang's rights against Charger in personam. To hold otherwise would "impute[ ] to the parties the drawing of a distinction the purpose of which is impossible to grasp." *THE MONROSA,* 359 U.S. at 184, 79 S.Ct. at 713 (Harlan, J., dissenting).

Sembawang's attempts to distinguish *The Bremen* are unpersuasive. That *Carnival Cruise Lines, The Bremen,* and *The Monrosa* concern forum-selection clauses instead of choice-of-law clauses makes no difference. Nor do the other purported distinctions affect our analysis. Nor will our decision deprive a plaintiff of security when it is appropriate; attachment under Supplemental Rule B may be had even if arrest under Supplemental Rule C may not. We emphasize that our holding on choice of law applies to the *creation* of a maritime lien or other right. We are not *ranking* liens, as the courts were doing in the cases cited by Sembawang. *See Brandon v. S.S. DENTON,* 302 F.2d 404, 410 (5th Cir.1962).

### III.

In the preceding Part, we determined that Sembawang's rights against Charger and against the Vessel are governed by Singapore law. We must decide what those rights are by examining the law of Singapore. We also must decide how those rights are to be protected under the procedural law of the United States courts. A brief examination of the Supplemental Admiralty Rules is a helpful starting point because it will guide our inquiry into unfamiliar Singapore law.

### A.

■ The Supplemental Rules appended to the Federal Rules of Civil Procedure allow a maritime plaintiff to secure his claim. Supplemental Rule B provides for attachment. Supplemental Rule C provides for arrest. Attachment and arrest are not the same, and they should not be confused. *See Belcher Co. v. M/V MARATHA MARINER,* 724 F.2d 1161, 1163–64 (5th Cir.1984).

Supplemental Rule E provides procedural rules for both attachment and arrest, though, and attachment and arrest are similar in several ways.

▆▆▆ Rule B is an adjunct to a claim in personam. When the defendant cannot "be found within the district," the plaintiff may "attach the defendant's goods and chattels." Supplemental Rule B. Thus, the plaintiff's claim is against the person, not the thing, but if the person cannot be found in the district, the plaintiff is protected by the ability to proceed against the thing. Such a proceeding is an action quasi in rem. In contrast, Supplemental Rule C is a true proceeding in rem. The claim is against the thing itself.

▆▆▆ Access to a proceeding in rem, under Rule C, is rigorously restricted. Traditionally, the plaintiff must hold a maritime lien. *See THE RESOLUTE*, 168 U.S. 437, 440, 18 S.Ct. 112, 113, 42 L.Ed. 533 (1897); Supplemental Rule C(1)(a). Additionally, a plaintiff may proceed under Supplemental Rule C "[w]henever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto." Supplemental Rule C(1)(b).

Sembawang relies heavily on this language, but without avail. It argues that it is proceeding under a statute that gives it rights that are sufficiently analogous to allow it to proceed in rem.[3] We disagree. The language, "[w]henever a statute of the United States provides for a maritime action in rem," allows a party to proceed under Supplemental Rule C if a United States statute allows a party to proceed in rem. The language, "or a proceeding analogous thereto" is a reference to Supplemental Rule A, which explains the scope of the Supplemental Rules. Supplemental Rule A states that the Supplemental Rules apply to certain remedies enumerated therein and "to the procedure in statutory condemnation proceedings analogous to maritime actions in rem, whether within the admiralty and maritime jurisdiction or not." Supplemental Rule A. Supplemental Rule C(1)(b) simply makes an action in rem available for such condemnation proceedings, even if they are not strictly maritime actions in rem. Rule C(1)(b) does not open actions in rem to proceedings under any statute for which astute counsel can draw an analogy.

▆▆▆ We still must decide whether "a statute of the United States provides for a maritime action in rem." Our attention is directed to two possible statutes. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards confers federal question jurisdiction on district courts. 9 U.S.C. § 203. Conferring federal question jurisdiction is not tantamount to "provid[ing] for a maritime action in rem," however, and we hold that CREFAA does not allow Sembawang to proceed under Rule C(1)(b).

▆▆▆ Sembawang also argues that the Federal Arbitration Act allows it to proceed under Rule C(1)(b). The Act provides,

If the basis of jurisdiction be a cause of action *otherwise justiciable in admiralty*, then, notwithstanding anything herein to the contrary, the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon award.

*Id.* § 8 (1988) (emphasis added). This provision does not itself confer jurisdiction or a right against the vessel in rem. *E.A.S.T., Inc. v. M/V ALAIA*, 673 F.Supp. 796, 800 (E.D.La.1987), *aff'd*, 876 F.2d 1168 (5th Cir.1989). To quote one of our sister circuits, "The purpose of section 8 is to relieve a party from making an election between the libel-cum-seizure remedy, on the one hand, and the order-to-arbitrate remedy of [9 U.S.C.] section 4 on the other

---

**3.** Sembawang relies on the High Court (Admiralty Jurisdiction) Act of 1962, ch. 123, §§ 3(1)(*l*)–(m), 4(a) (1985) (Sing.) (allowing a statutory right of action in rem for claims arising from the supply of materials and repairs), the Federal Arbitration Act, 9 U.S.C. §§ 1–8, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208.

hand—not to append the right to seizure to the order-to-arbitrate remedy of section 4." *Greenwich Marine, Inc. v. S.S. ALEXANDRA,* 339 F.2d 901, 904 (2d Cir.1965).[4]

We conclude that no "statute of the United States provides for a maritime action in rem" in the present case, that Sembawang can invoke no "analogous" statute, and that Sembawang therefore cannot proceed in rem under Supplemental Rule C(1)(b).[5] Sembawang argues in the alternative, however, that it holds a maritime lien and is proceeding under Supplemental Rule C(1)(a). We address this argument in the following section.

### B.

■ Sembawang cannot rely on the Federal Maritime Lien Act[6] because the issue whether Sembawang holds a maritime lien is governed by Singapore law. *See supra* Part II. Thankfully, we have an excellent source to guide us through Singapore law. In addition to the helpful affidavits from the parties' Singapore co-counsellors, the Judicial Committee of the Privy Council, the supreme authority on such subjects, has rendered a thorough decision on the issues that we face. *See Bankers Trust Int'l Ltd. v. Todd Shipyards Corp. (HALCYON ISLE),* 1981 App.Cas. 221, 1980 A.M.C. 1221 (P.C.1980) (appeal taken from Sing.) [hereinafter cited to A.M.C. only]. In all aspects relevant here, Singapore law and English law are the same. *Id.* at 1222.

Under English law, in rem jurisdiction and the maritime lien once "went hand in hand," as they still do in the United States. *Id.* at 1225–26. After "the American colonies left the Motherland," however, English law on maritime liens changed fundamentally. William Tetley, *Maritime Liens and Claims* 433 *passim* (1st ed. 1985). Now the United States stands at one extreme, allowing maritime liens relatively widely, while Singapore stands at the other. *See HALCYON ISLE,* 1980 A.M.C. at 1236–38. Singapore would not allow a maritime lien in the case at bar. *See id.*

■ Singapore would allow a statutory right of action in rem in this case. *See* High Court (Admiralty Jurisdiction) Act of 1962, ch. 123, §§ 3(1)(*l*)–(m), 4(a) (1985) (Sing.). A statutory right of action in rem is not the same as a maritime lien, however. For instance, a maritime lien is a powerful, secret charge on a thing, and follows that thing into the hands of a buyer, even if that buyer had no notice of it. Because of the power of the maritime lien, it has been strictly construed for centuries. *E.g., Vandewater v. Mills (THE YANKEE BLADE),* 60 U.S. (19 How.) 82, 89, 15 L.Ed. 554 (1857) (discussing the ancient civil law origins of the maritime lien and its strict construction). Under Supplemental Rule C(1)(a), a maritime lien is required, and a statutory right of action in rem will not suffice. Nor will it suffice under Supplemental Rule C(1)(b) when the statute conferring that right of action is not a statute of the United States. We hold, therefore, that Sembawang improperly proceeded

---

**4.** *E.A.S.T., Inc. v. M/V ALAIA,* 876 F.2d 1168 (5th Cir.1989), does not say anything different. We held in that case that when a party has a right to proceed in admiralty independent of the Federal Arbitration Act, it may do so under § 8 to secure the claim that it will arbitrate. *Id.* at 1173.

**5.** We realize that our decision may conflict with *Castelan v. M/V MERCANTIL PARATI,* 1991 A.M.C. 2141, 1991 WL 83129 (D.N.J. May 8, 1991) (opinion designated "NOT FOR PUBLICATION"). To the extent that its decision and our decision conflict, we must respectfully disagree with the district court in New Jersey. We do agree that a maritime lien is not essential to proceeding under Rule C; Rule C(1)(b) all but states this proposition. We do not believe, however, that a party may proceed under Rule C because "the Federal Arbitration Act provides

for a proceeding analogous to a United States statute that provides for a maritime action in rem." *Id.* at 2146.

We do agree with the *Castelan* court that if we were to follow the reasoning of the district court in the case at bar, we would "eras[e] the distinction ... between a maritime lien and a statutory right to proceed in rem." *Id.* at 2147. Our precedent prevents us from "erasing" this fundamental distinction, even if we were inclined to do so. *See Belcher Co. v. M/V MARATHA MARINER,* 724 F.2d 1161 (5th Cir.1984). *See infra* section III.B. We do note that another district court, in a published decision, appears to agree with us. *Trinidad Foundry & Fabricating Ltd. v. M/V K.A.S. CAMILLA,* 776 F.Supp. 1558 (S.D.Fla.1991).

**6.** *See* 46 U.S.C. §§ 31301, 31342.

against the Vessel in rem under Supplemental Rule C.

### C.

 That it could not properly proceed under Supplemental Rule C does not prevent Sembawang from proceeding by attachment under Supplemental Rule B. It should have done so, but it erred. Neither Charger nor the Vessel, however, has been prejudiced by Sembawang's technical pleading error. We refuse to condone the manifest injustice that would result if we were to prevent Sembawang from collecting against the Vessel's bond in this case, in which there is no prejudice to the other side. A different result would harken back to the days of exceedingly technical pleading requirements, when a plaintiff who chose the wrong form of action lost his case no matter how meritorious it was. Those were picturesque times; as it was said some time ago, the law

> contains every weapon of medieval warfare from the two-handed sword to the poniard. The man who has a quarrel with his neighbour comes thither to choose his weapon. The choice is large; but he must remember that he will not be able to change weapons in the middle of the combat and also that every weapon has its proper use and may be put to none other."

2 Frederick Pollock & Frederic W. Maitland, *The History of English Law* 561 (2d ed. Lawyers' Literary Club 1959) (1st ed. 1895); *cf. E.I. Dupont de Nemours & Co. v. Vance (THE ANN ELIZABETH)*, 60 U.S. (19 How.) 162, 171–72, 15 L.Ed. 584 (1856).

We decline to return to those days, romantic though they may sound. We therefore allow Sembawang to proceed against the bond, as it would have been able to do if it had proceeded under Supplemental Rule B.

### IV.

 Having finished our analysis of the in rem claims, we turn to the question of jurisdiction over the person. Charger argues that the district court lacked jurisdiction in personam and argues that it was never properly served with in personam process. We find that Charger waived these defenses, however, in its claim of owner.

We fully agree with Charger that a claim of owner may be restricted. The Supplemental Rules say as much:

> An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment whether pursuant to these Supplemental Rules or to Rule 4(e), may be expressly restricted to the defense of such claim, and in that event shall not constitute an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

Supplemental Rule E(8). Thus, Charger need not have waived its defenses to in personam jurisdiction if it had "expressly restricted" its claim of owner.

Charger's claim of owner reads as follows:

> NOW COMES Charger, Inc., appearing specially herein through its undersigned attorneys, duly authorized, and shows that it is the sole owner of M/V CHARGER, proceeded against in this action, and is entitled to restitution of same and the right to defend this action.
>
> This appearance is restricted to the defense of the claims set forth in the *pending complaint* only, and is made with full reservation of all objections and defenses which may be available *to the vessel*, none of which shall be deemed to have been waived.

1 R. 315 (emphasis added). Charger restricted its appearance to the claims set forth in the pending complaint. The complaint, though, states both claims in personam and claims in rem. The reservation of defenses in Charger's claim of owner refers only to the Vessel's defenses, and the Vessel has no defenses to in personam jurisdiction. Charger successfully reserved its defense to in rem jurisdiction, but because it did not "expressly re-

strict[ ]" its claim of owner for purposes of in personam jurisdiction, those defenses have been waived. *Cf. Cactus Pipe & Supply Co. v. M/V MONTMARTRE,* 756 F.2d 1103, 1110–11 (5th Cir.1985) (claim of owner that is not expressly restricted waives objections to in rem jurisdiction).

## V.

Finally, we address the issue raised in the cross-appeal, that is, whether Sembawang's judgment should be converted to United States currency using the exchange rate on the date of judgment instead of the date of breach. We hold that the date of judgment was the appropriate day and instruct the district court to modify its judgment accordingly.

An obligation governed by the laws of a foreign country and fixed in foreign currency is converted by our courts at the rate in effect on the date of judgment. *Deutsche Bank Filiale Nurnberg v. Humphrey,* 272 U.S. 517, 47 S.Ct. 166, 71 L.Ed. 383 (1926) (Holmes, J.). We have followed this rule before. *Paris v. Central Chiclera S. de R.L.,* 193 F.2d 960, 962–63 (5th Cir.1952). *Compare Jamaica Nutrition Holdings, Ltd. v. United Shipping Co.,* 643 F.2d 376, 380–81 (5th Cir. Unit A April 1981) (convert on date of breach when United States law governs). The obligation in the case at bar is governed by the laws of Singapore and is fixed in Singapore dollars. The judgment-date rule is not changed "by the fact that the creditor happens to be able to catch his debtor here." *Deutsche Bank,* 272 U.S. at 519, 47 S.Ct. at 166. The conversion rate on the date of judgment should therefore be applied.

## VI.

For the foregoing reasons, we AFFIRM the judgment for the Plaintiff. We, however, REMAND WITH INSTRUCTIONS TO MODIFY the judgment so that the conversion rate on the date of judgment, instead of the date of breach, may be applied.