United States Court of Appeals,

Fifth Circuit.

No. 97-40709.

HEIDMAR, INC. and Heidenreich Marine, Inc., as agents for Heidmar, Inc., Plaintiff-Appellant,

v.

ANOMINA RAVENNATE DI ARMAMENTO SP.A. OF RAVENNA and A.R.A. Anomina Ravennate Di Armamento Sp.A. in personam, and the M/V Pegasus Erre, Her Hull, Engines, Machinery, Tackle, Apparel, Furniture, etc., in rem, Defendants-Appellees.

Jan. 15, 1998.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, DAVIS and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants Heidmar, Inc. and Heidenreich Marine, Inc. (collectively, "Heidmar") appeal an order of the district court vacating the attachment of a vessel, the M/V Pegasus Erre ("Pegasus Erre"), owned by appellees Anomina Ravennate Di Armamento Sp.A. of Ravenna and A.R.A. Anomina Ravennate Di Armamento Sp.A. (collectively, "Ravennate"). For the reasons set out below, we conclude that the district court erred in vacating the attachment and remand for further proceedings.

I.

Heidmar is a Liberian corporation with a principal place of business in Greenwich, Connecticut. Heidmar provides ocean transportation services, primarily transporting oil products for petroleum companies. Heidmar does not own any vessels; rather, it charters them as needed from other entities. Ravennate is an

1

Italian corporate entity with a principal place of business in Ravenna, Italy and the owner of the Pegasus Erre, an oil tanker.

In May 1995, Heidmar negotiated a time charter party with Ravennate for the Pegasus Erre. Among other things, the charter party required that the vessel be oil-tight, fit to carry crude petroleum and its products, and in good order and condition. The charter party also required Ravennate to have the vessel inspected and approved by various oil companies during the life of the charter party. The charter party provided that its terms would "be construed and the relations between the parties determined in accordance with the laws of England," and that either party could elect to have any dispute arbitrated by a single arbitrator in London.

The Pegasus Erre was delivered to Heidmar in November 1995. In October 1996, however, Heidmar returned the Pegasus Erre to Ravennate, complaining that the vessel was unfit and had not met the terms of the charter party. Ravennate denied that it had breached the charter party, and countered that rather Heidmar had breached the charter party by returning the vessel before its expiration. Unable to resolve their dispute, the parties commenced arbitration proceedings in London. That arbitration is still pending.

On March 7, 1997, Heidmar filed suit against the Pegasus Erre, in rem, and against Ravennate, in personam, in the Southern District of Texas. Heidmar sought a judgment against Ravennate and the Pegasus Erre, as well as the arrest of the vessel pursuant to

Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims.[1]

Heidmar filed its complaint at approximately 3:45 p.m. CST.[2] Its complaint was accompanied by a motion for an expedited hearing on its request for the arrest of the Pegasus Erre. Heidmar's counsel was advised that he should await the arrival of a magistrate judge who would conduct an *ex parte* hearing that afternoon. Meanwhile, at approximately 4:00 p.m. CST, Ravennate faxed a notification that it had appointed an agent for service of process in the Southern District of Texas to Heidmar's headquarters in Connecticut.[3]

At approximately 4:45 p.m. CST, a magistrate judge held a hearing on Heidmar's request for the arrest of the Pegasus Erre. Neither she nor Heidmar's counsel were aware of Ravennate's appointment of an agent for service of process. The magistrate judge granted Heidmar's request and issued a warrant for the arrest

---

[1] Rule C provides that an action in rem may be brought: (a) to enforce any maritime lien; or (b) whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto. Fed.R.Civ.P.Supp.R. C(1)(a), (b). If the court finds that the conditions for an action in rem appear to exist, it will issue an order authorizing a warrant for the arrest of the vessel or other property that is the subject of the action. Fed.R.Civ.P.Supp.R. C(3).

[2] Heidmar's filing fee receipt is time-stamped 3:48:41 p.m. CST. Although Ravennate suggests that Heidmar's complaint was not filed until it was presented to a magistrate judge at approximately 4:45 p.m. CST, it is mistaken. *See* Fed.R.Civ.P. 5(e) ("The filing of papers with the court as required by these rules shall be made by filing them with the clerk of court...."). 

[3] Ravennate's fax transmittal sheet is time-stamped 4:05 CST.

of the Pegasus Erre.  The vessel arrived in Corpus Christi, Texas on March 9, and was arrested the following day.

On March 12, the Pegasus Erre filed a motion to vacate the arrest on the ground that English law, which governs the charter party, does not provide for a maritime lien for breach of a charter party.[4]  At a hearing that day, the magistrate judge denied its motion.

A few days later, the magistrate judge issued an order setting the amount of security for the release of the Pegasus Erre at $839,078 plus interest.  Ravennate subsequently posted a bond in that amount and the Pegasus Erre was released.

After the magistrate judge denied the Pegasus Erre's motion to vacate the arrest, Ravennate and the Pegasus Erre filed a motion to dismiss which the district court converted into a motion for summary judgment.  On May 15, 1997, the court ruled that Heidmar could not proceed against the Pegasus Erre in rem under Rule C because English law does not provide for a maritime lien for breach of a charter party.  The court, however, temporarily converted the arrest of the vessel into an attachment under Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims pending further briefing on the issue of whether Ravennate could be "found within the district" for purposes of Rule B.[5]

---

[4]To reiterate, the charter party provided that its terms would "be construed and the relations between the parties determined in accordance with the laws of England."

[5]Rule B provides, in relevant part:  "With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and

On June 19, 1997, the court ruled that Ravennate could be found within the district for purposes of Rule B and issued an order vacating the attachment. The court also ruled that Ravennate had not waived its objection to arrest of the Pegasus Erre, as Heidmar had argued, and ordered the release of the bond. The court stayed further proceedings in the case pending the outcome of the London arbitration.

Heidmar now appeals the court's order vacating the attachment.

## II.

As a preliminary matter, we must address Ravennate's contention that we lack jurisdiction over this interlocutory appeal. Generally, we may only hear appeals from final orders unless the district court has certified an order for appeal. *See* 28 U.S.C. §§ 1291, 1292(b). Heidmar contends, however, that the district court's order is a collateral order appealable under *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In *Cohen,* the United States Supreme Court recognized an exception to the final judgment rule for orders that "fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225-26.

---

chattels ... if the defendant cannot be found within the district." Fed.R.Civ.P.Supp.R. B(1).

In *Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950), the Supreme Court held that an order vacating attachment was appealable under *Cohen* because "[a]ppellate review of the order ... at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." *Id.* at 689, 70 S.Ct. at 865. We find *Swift & Co.* controlling and therefore conclude that we have jurisdiction over this appeal.

## III.

### A.

The initial question presented in this appeal is one of timing: in order for a defendant to be "found within the district" for purposes of Rule B, must the defendant be present in the district at the time the complaint is filed, or may the defendant appear some time thereafter? Ravennate argues that a defendant can be found within the district if it is present at the time of seizure. Heidmar, on the other hand, argues that a defendant cannot be found within the district if it is not present at the time the plaintiff files its complaint.

Heidmar relies on *LaBanca v. Ostermunchner,* 664 F.2d 65 (5th Cir.1981). In determining whether attachment was appropriate under Rule B in that case, we stated: "The issue before us now is whether the [defendants] could be found within the Middle District of Florida *at the time appellant filed this action.*" *Id.* at 67 (emphasis added). Although Ravennate correctly observes that we did not squarely address the issue of whether the defendant must be

present at the time the complaint is filed or at some other time, we conclude that in *LaBanca* we correctly looked for presence at the time the complaint was filed.

First, the text of Rule B itself indicates that, at the very least, courts do not look for presence at the time of attachment. Rule B provides that a party seeking attachment must submit along with its complaint an affidavit signed by the party or its attorney that, to the best of the affiant's knowledge or belief, the defendant cannot be found within the district. Fed.R.Civ.P.Supp.R. B(1). Rule B further provides that if the court upon review of the complaint and the affidavit finds that the conditions set forth in the rule appear to exist, the court shall authorize attachment. *Id.* Thus, it is apparent that the determination of whether the defendant can be found within the district must be made before attachment is ordered.

Second, we recognize that attachment serves two purposes: 1) securing the defendant's appearance and 2) assuring satisfaction in case the plaintiff's suit is successful. *See Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,* 339 U.S. 684, 693, 70 S.Ct. 861, 867, 94 L.Ed. 1206 (1950). Thus, the appearance of the defendant before seizure is effected does not entirely vitiate the justification for attachment. As the Supreme Court has observed, "an attachment is not dissolved by the subsequent appearance of respondent." *Id.*

Third, we believe that a time-of-filing rule furthers the interests of fairness and judicial economy. Testing for presence

after the complaint has been filed would permit a defendant to wait until a plaintiff files a complaint and then appoint an agent for service of process for the sole purpose of defeating attachment. By the time the defendant appears, the court may have devoted substantial time and energy to the consideration of the plaintiff's complaint.

Finally, the only other circuit court that has dealt with the issue before us affirmed an order of attachment because the defendant was not within the district at the time attachment was sought and granted. *See Navieros Inter-Americanos, S.A. v. M/V Vasilia Express,* 120 F.3d 304, 314-15 (1st Cir.1997) (observing that to hold otherwise would allow "a defendant who was otherwise safely outside the service power of the district court [to] effectively avoid Rule B attachment by waiting until after the plaintiff filed a Rule B motion to designate an agent for service").

Accordingly, we hold that a defendant cannot be found within the district for purposes of Rule B if it is not present in the district at the time the complaint is filed. A defendant is present in the district if 1) the defendant can be found within the district in terms of jurisdiction, and 2) the defendant can be found within the district for service of process. *LaBanca v. Ostermunchner,* 664 F.2d 65, 67 (5th Cir.1981).

In this case, the record reflects that Ravennate could not be found within the Southern District of Texas for service of process at the time Heidmar filed its complaint. Heidmar filed its

complaint on March 7, 1997 at approximately 3:45 p.m. CST. There is no evidence that Ravennate appointed an agent for service of process in the Southern District of Texas any earlier than approximately 4:00 p.m. CST that day. We conclude therefore that Ravennate could not be found within the district for purposes of Rule B and that the district court erred in reaching a contrary conclusion.

## B.

We must next consider Ravennate's alternative argument that attachment is nevertheless inappropriate because Ravennate was present in the district at the time the district court converted the Rule C arrest into a Rule B attachment. Heidmar argues that we must reject this argument in light of *Sembawang Shipyard, Ltd. v. Charger, Inc.,* 955 F.2d 983 (5th Cir.1992). In *Sembawang,* the plaintiff sought the arrest of a vessel under Rule C after the defendant breached a repair contract. The district court issued an arrest warrant and the vessel was seized. The defendant thereafter secured the release of the vessel by posting a bond. On appeal, we concluded that the arrest of the vessel was improper because the requirements of Rule C had not been met. *See id.* at 986-89. We determined, however, that the plaintiff should have proceeded under Rule B and that its failure to do so was merely a technical pleading error. *See id.* at 989. Because the defendant had not shown that it had been prejudiced by the plaintiff's error, we allowed the plaintiff to proceed against the bond as if the plaintiff had originally proceeded under Rule B. *See id.* In

9

effect, we allowed the conversion of the Rule C arrest to a Rule B attachment to relate back to the original filing of the complaint.

Heidmar, too, should have proceeded under Rule B, and Ravennate has not alleged that it has suffered any prejudice from Heidmar's mistake in seeking arrest under Rule C instead of attachment under Rule B. Accordingly, we conclude that Heidmar may proceed as if it had originally brought this action under Rule B.

## IV.

For the reasons set out above, we conclude that the district court erred in vacating the attachment of the Pegasus Erre. We therefore vacate that portion of its June 19, 1997 order vacating attachment and remand for further proceedings consistent with this opinion.

VACATED AND REMANDED.