# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 3, 2021

Lyle W. Cayce
Clerk

No. 21-10068

Tango Marine S.A.,

*Plaintiff—Appellee*,

*versus*

Elephant Group Limited; Elephant Group, P.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:20-CV-42

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

A maritime case was filed in the Northern District of Texas against two Nigerian business entities. The district court vacated the initial default against the Nigerian entities, but subsequent procedural errors led to a second default judgment that the district court refused to vacate. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

Tango Marine S.A., a Grecian corporation, filed suit in the Northern District of Texas against two Nigerian businesses, Elephant Group Limited

and Elephant Group, P.L.C. (collectively, "Elephant Group"). Tango alleges that the Elephant Group chartered one of its vessels to deliver cargo to Lagos, Nigeria in 2016. Upon arrival in Lagos, though, the Nigerian port authorities prevented the unloading of the cargo. Tango alleges that the vessel was detained for two and a half years due to the Elephant Group's failure to obtain proper permissions for the cargo, which caused damages for demurrage, supply, and maintenance charges. Tango also sought maritime attachment and garnishment pursuant to Federal Rule of Civil Procedure Supplemental Rule B.

Serving process on the Nigerian entities proved difficult. The district court granted Tango's request to serve the Elephant Group via email or mail. Approximately one month after this alternative service occurred and no response arrived, Tango sought entry of default, which the clerk entered. When no motion for default judgment appeared before the court, the court ordered Tango to file its motion for default judgment or explain its failure. Only after Tango filed its motion for default judgment did the Elephant Group participate in the suit by filing a motion for extension of time to file an answer and a notice of appearance. It also sought to have the default set aside, claiming that it was entering a restricted appearance under Supplemental Rules for Admiralty or Maritime Claims Rule E(8). It stated it was appearing solely to contest the merits of the claim underlying the attachment. The court set aside the initial default but required the Elephant Group to pay Tango's attorneys' fees for their legal work up to that point.

With the initial default set aside, the Elephant Group filed a motion to dismiss under Federal Rule of Civil Procedure 12(b), arguing that (1) the court lacked jurisdiction (both personal and subject matter), (2) the complaint failed to comply with Rule 8(a)(2), and (3) Tango failed to join an indispensable party.

No. 21-10068

In response, Tango filed two pleadings on the same day. First, it filed an amended complaint. It also filed a "response opposing [the] motion to dismiss," which argued the amended complaint cured the defects identified in the motion to dismiss. The Elephant Group responded only to this response to the motion to dismiss and never filed an answer to the amended complaint. Its reply to the motion to dismiss response referenced the amended complaint several times and specifically asked the district court to "dismiss, with prejudice, the Amended Complaint and the causes of action pled therein pursuant to" Rule 12(b). Importantly for later rulings by the district court, no answer to the amended complaint was filed.

Two days after the Elephant Group filed that reply to the response in opposition to the motion to dismiss, Tango asked the clerk for a second entry of default due to the Elephant Group's failure to answer the amended complaint. The Elephant Group filed an objection to this motion on the same day. Nevertheless, the clerk entered "default for want of answer or other defense."

The Elephant Group moved to have this second default set aside, which the district court denied. The district court determined that the Elephant Group's default was "willful" and that "willfulness of the default ends the inquiry." The district court also held that, even if the default were not willful, the Elephant Group failed to show that it had any meritorious defenses. It thus granted Tango's subsequent motion for default judgment and entered final judgment for $4,491,784.17, plus post-judgment interest, over the Elephant Group's objections. The Elephant Group appealed.

## DISCUSSION

The Elephant Group makes two arguments on appeal. First, it maintains that the district court never acquired personal jurisdiction over it. Tango counters both that there is personal jurisdiction and that the Elephant

3

Group waived the personal-jurisdiction argument by not making such argument in its very first filing. Second, the Elephant Group argues that the district court abused its discretion in entering the default judgment. Tango asserts that default judgment was appropriate. We consider the Elephant Group's arguments that the district court lacked personal jurisdiction as part of our default judgment analysis, as the two issues require some common analysis.

Under the federal rules, "a district court may set aside an entry of default or default judgment for 'good cause.'" *Lacy v. Sitel Corp.*, 227 F.3d 290, 291–92 (5th Cir. 2000). We review a refusal to set aside a default or default judgment for an abuse of discretion. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 495 (5th Cir. 2015). "Because of the seriousness of a default judgment, and although the standard of review is abuse of discretion, even a slight abuse of discretion may justify reversal." *Lacy*, 227 F.3d at 292 (quoting *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 n.1 (5th Cir. 1992)).

We have identified three factors to determine whether good cause exists: (1) the willfulness of the default, (2) the prejudice to the opposing party if the default is set aside, and (3) the presence of any meritorious defenses for the defaulting party. *Id.* A district court may properly refuse to set aside a default judgment if the defendant "fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." *Id.* at 293.

The default here was the failure to answer the amended complaint. The Elephant Group did reply to the response to the motion to dismiss that was filed simultaneously with the amended complaint, referred to the amended complaint in that reply, but clearly never filed an answer. The district court's entry of default was primarily based on its conclusion that the

Elephant Group acted "willfully"; it also commented that no meritorious defenses were presented. We doubt that "willful" is the right label for counsel's failure to file an answer. It did, after all, quickly make a filing referring to the new complaint. Inadvertence, clumsiness, or related labels come to mind. Whatever the inaction should be called, there was no filed answer. In the first order refusing to set aside the clerk's entry of default, the district court stated that the "willfulness of the default ends the inquiry," which is what our caselaw provides. *See id.* at 292. The district court nonetheless went on to conclude that no meritorious defenses existed either.

Relieving the Elephant Group of its default is not controlled by whether we disagree with the finding of willfulness. Even without willfulness or even prejudice to the other party, "a district court may have the discretion not to upset a default judgment if the defendant fails to present a meritorious defense sufficient to support a finding on the merits for the defaulting party." *Id.* at 293. That makes sense, as setting aside the default in the absence of a meritorious defense just postpones the inevitable. Thus, we examine the proposed defenses.

The Elephant Group first contends that the district court had no personal jurisdiction and the absence amounts to a meritorious defense. Components of that argument are that it was a group of Nigerian businesses with its principal place of business outside the United States. Further, it had no continuous and systematic contacts with the forum state, Texas, and did not even have any property there. Tango responds by saying the Elephant Group waived its arguments about a lack of personal jurisdiction by failing to present that argument in its first responsive pleading. Tango also argues that the Elephant Group did have minimum contacts in the forum state.

Some of the arguments raise issues of the existence of a distinction between general and special appearances in litigation. The Federal Rules of

Civil Procedure have abolished any distinction.  The Civil Rules require only that a party raise certain defenses by motion or in its first responsive pleading, including the lack of personal jurisdiction.  *See* FED. R. CIV. P. 12(b)(2), 12(h).  Those Rules, though, do not supplant the Supplemental Rules for Admiralty that are relied upon by Tango in this case. *E.g.*, *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 989 (5th Cir. 1992).  Those Supplemental Rules continue to recognize both a general and a more limited category of appearance:

> Restricted Appearance.  An appearance to defend against an admiralty and maritime claim with respect to which there has issued process *in rem*, or *process of attachment and garnishment*, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served.

FED. R. CIV. P., SUPP. RULE E(8) (emphasis added).  As we stated long after the distinction between special and general appearances was otherwise abolished, failure to appear specially to contest *in personam* jurisdiction can amount to waiver of that defense in maritime actions.  *See Sembawang Shipyard*, 955 F.2d at 989.

Tango argues that the Elephant Group ignored the perils of admiralty appearances and entered an unrestricted general appearance.  Our review of the record reveals that the Elephant Group attempted to restrict its appearance in its initial motion to set aside default.  Prior to this motion, though, counsel for Elephant Group (1) filed an application for admission *pro hac vice*; (2) filed a motion for extension of time; and (3) entered a "Joint Notice of Appearance."  Did any of these filings constitute a general appearance on behalf of Elephant Group?

When determining whether a party has made a general appearance, we inquire whether the party has made "some presentation or submission to the court." *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1108 (5th Cir. 1985). This can arise from filing an answer without raising jurisdictional defects or impliedly "from a defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction or by reason of some act or proceedings recognizing the case as in court." *Id.* (quotation marks and citation omitted).

None of the filings prior to the motion to set aside default were general appearances. None of these actions evince the "seeking, taking, or agreeing to some step or proceeding in the cause" required to constitute a general appearance. *Id.* Rather, they are best viewed as early maneuvering prior to any answer or motion; we agree with another circuit that they give "no hint that the answer will waive personal jurisdiction defects." *Benny v. Pipes*, 799 F.2d 489, 493 (9th Cir. 1986), *amended by* 807 F.2d 1514 (9th Cir. 1987).

We now examine the language of the Elephant Group's initial motion to set aside default to see if it was a restricted appearance. In the final few pages of the motion, the Elephant Group maintains that it is specially appearing "to defend against the claim underlying the attachment or arrest," and cites Supplemental Rule E(8) for this proposition. Though the Elephant Group does not drape its entire motion in the protection of a restricted appearance, we are satisfied that this invocation of Rule E(8) is sufficient to constitute a restricted appearance.

The Elephant Group's restricted appearance, though, does not mean that there was no *in personam* jurisdiction over the Elephant Group. In this case, Tango specifically sought attachment and garnishment pursuant to Rule B of the Supplemental Rules of Civil Procedure because it believed

No. 21-10068

Elephant Group was not present in the district. Supplemental Rule B is "an adjunct to a claim *in personam*." *Sembawang Shipyard*, 955 F.2d at 987. Functionally, Rule B establishes a *quasi in rem* proceeding which "allows a district court to take jurisdiction over a defendant in an admiralty or maritime action by attaching property of the defendant." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 421 (5th Cir. 2001). One treatise labels Rule B attachment as a *quasi in rem* process for *in personam* maritime claims. 29 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 705.04 (Matthew Bender 3d Ed. 2021). Importantly, it is the "good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court" — not the successful attachment of that *res* — that is "*the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*." *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992). This is confirmed by the fact that the court maintains its jurisdiction even after a successful attachment has been vacated. *See J. Lauritzen A/S v. Dashwood Shipping, Ltd.*, 65 F.3d 139, 142 (9th Cir. 1995).

In this case, Tango alleged, and the district court approved, writs of attachment for various assets owned by the Elephant Group that Tango believed were present in the district. Tango's good faith allegations in its complaint were the "jurisdictional facts" that generated Rule B *in personam* jurisdiction over the Elephant Group. When the district court entered the second default, this jurisdiction existed. Thus, even assuming that a lack of personal jurisdiction amounts to a meritorious defense, here there was jurisdiction over the Elephant Group.

The Elephant Group claims it asserted two other meritorious defenses: pleading defects under Rule 8(a)(2) and failure to join an indispensable party. The Elephant Group simply cites Fifth Circuit precedents but does not analyze their application here. Recitations of law

without a "definite recitation of facts" supporting the applicability of that law to this case are insufficient to establish a meritorious defense. *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969).

Looking beyond that briefing defect, we see that Tango's first amended complaint set out extensive facts and included exhibits upon which its claims were based. No pleading defect appears there. Further, at no point did the Elephant Group identify the indispensable third party that needed to be joined, instead unhelpfully referring to it as "the charterer." The decision not to identify the allegedly indispensable party may have served some important purpose for the Elephant Group, but it failed to aid in the purpose of setting aside a default.

We agree with the district court that neither claimed defense suffices. The presentation of meritorious defenses requires "definite factual allegations, as opposed to mere legal conclusions." *Jenkens & Gilchrist v. Groia & Co.*, 542 F.3d 114, 122 (5th Cir. 2008). Legal conclusions were all that were presented.

AFFIRMED.