**DANNEBROG REDERI AS, Nordana Line AS, and M/V Skanderborg, Plaintiffs,**

v.

**M/Y TRUE DREAM, her engine, gear, appurtenances, and Zevenster Yachttransport, Defendants.**

Nos. 99–2908–CIV, 99–2911–CIV, 99–2926–CIV, 99–3396.

United States District Court, S.D. Florida.

Feb. 28, 2001.

Robert D. McIntosh, Adorno & Zeder, P.A., Ft. Lauderdale, FL, for plaintiffs Dannebrog Rederi AS, Nordana Line & M/V "Skanderborg".

Michael T. Moore, Holland & Knight, Miami, FL, for plaintiffs Dannebrog Rederi AS, Nordana Line & M/V "Skanderborg".

Chester D. Hooper, Haight Gardner, New York City, for plaintiffs Dannebrog Rederi AS, Nordana Line & M/V "Skanderborg".

Alejandro F. Hoyos, Holland & Knight L.L.P., Miami, FL, for plaintiffs Dannebrog Rederi AS, Nordana Line & M/V "Skanderborg".

Andrew W. Anderson, Robert D. Tracy, Keller & Houck, P.A., Miami, FL, for plaintiffs All Underwriters.

Gary Davidson, Fowler, Rodriguez, Kingsmill, Flints & Gray, L.L.P., Coral Gables, FL, for defendants M/Y "True Dream" and Ashlar Limited.

Antonio J. Rodriguez, Rice, Fowler et al., New Orleans, LA, for defendants M/Y "True Dream" and Ashlar Limited.

## *ORDER*

GOLD, District Judge.

**THIS CAUSE** is before the Court upon the following motions:

- Defendant Ashlar Limited's ("Ashlar") Motion for a Stay of all Proceedings or to Extend Time to Respond to Discovery [D.E. 89–1 and 89–2][1], filed on August 23, 2000.

- Plaintiff All Underwriters Subscribing to Policy No. MC984591, including Underwriters at Lloyds, London's ("Underwriters") Motion for Equitable Relief [D.E. 95], filed on August 25, 2000.

- Underwriters' Motion for Leave to Amend Complaint [D.E. 114], filed on October 2, 2000.

These motions were fully briefed by the parties, after which the Court held a hearing on December 8, 2000. Following the hearing the Court issued an omnibus order [D.E. 147] requesting further memoranda from the parties. The parties filed additional briefs on the issues, and the Court has determined upon a review of these matters that no further hearing is necessary.

After careful consideration of the parties' arguments, the applicable case law, and the record as a whole, the Court concludes that Underwriters' motions for leave to amend and for equitable relief should be denied and that Ashlar's motion

---

1. The docket entry refers to the docket entry in case no. 99–2908–Civ–Gold. This case has been consolidated for pretrial purposes with case nos. 99–2911–Civ–Gold, 99–2926–Civ–Gold, and 99–3396–Civ–Gold, and the pleadings have been filed concurrently in all four cases. Although the pleadings may have different docket numbers in the different cases, this Order effectively resolves the indicated motions in all of the consolidated cases.

to stay and for extension should be denied in part and granted in part.

## I. Background

### A. Underlying Facts of the Case

The facts, as set forth in the Court's June 29, 2000 Amended Order Vacating Arrest of M/Y True Dream [D.E. 75], reveal the following:

The M/Y True Dream is a pleasure yacht registered in the Isle of Man. Ashlar, Ltd, ("Ashlar") the owner of the True Dream, contracted with Zevenster Yachttransport ("Zevenster"), a space charterer onboard the M/V Skanderborg ("Skanderborg"), to transport the True Dream from Europe to Fort Lauderdale, Florida.

On or about October 11, 1999, in Genoa, Italy, the True Dream, under her own power, positioned itself alongside the Skanderborg and was lifted onto the deck of the Skanderborg. Prior to being loaded onto the Skanderborg, the True Dream was asked to empty her fuel tanks. However, Italian authorities would not allow the fuel to be sold or given away in Italy, and eventually the Skanderborg agreed to accept the True Dream with the fuel on board. At the time the True Dream was placed aboard the Skanderborg, the True Dream had approximately 8000 liters of fuel in its tanks. Roughly 6,000 liters of the fuel were in the stern tank, with 1,000 liters in each of the wing tanks. The stern tank was full or pressed, with the only possible free surface effect occurring in the wing tanks.

During the transit from Genoa to Fort Lauderdale, the True Dream rolled over, broke free from the lashings, and allided with an adjacent yacht, the M/Y M. Paradise ("M.Paradise"), causing significant damage. Bostwick, a True Dream crewmember who was traveling with the yacht to get it ready for a boat show in Florida, was on board the True Dream at the time of the incident.

### B. Procedural Background

A number of lawsuits were filed upon the Skanderborg's arrival in Florida, all in admiralty. Specifically, in Case No. 99–2908–CIV–GOLD, the owners and operators of the Skanderborg, Dannebrog Rederï AS and Nordana Line AS, filed suit against the True Dream and Zevenster Yachttransport, alleging that Zevenster insufficiently secured the True Dream, and seeking indemnity and declaratory relief. In Case No. 99–2911–CIV–GOLD, Ashlar, Ltd, owner of the True Dream, sued the Skanderborg *in rem* and Zevenster Yachttransport *in personam*, asserting breach of contract, bailment, and negligence claims. A warrant for the arrest of the Skanderborg was obtained, but was not served as the Skanderborg provided a letter of undertaking in lieu of arrest. In Case No. 99–2926–CIV–GOLD, Playtime, Inc., owner of the M. Paradise, filed an *in rem* suit against the Skanderborg, alleging that a maritime lien exists due to the negligence of the Skanderborg. A warrant for the arrest of the Skanderborg issued and was executed by the U.S. Marshal, with the court subsequently releasing the vessel in accordance with Supplemental Rule E(5). In Case No. 99–3396, Playtime, Inc. filed a suit against the True Dream *in rem* and Ashlar, Ltd. *in personam*, alleging breach of a duty of care, unseaworthiness, and negligence. A warrant for the arrest of the True Dream issued and the vessel was arrested pursuant to Rule C. All four lawsuits were consolidated by this court for discovery and pretrial purposes on January 28, 2000.

On May 3, 2000, the Court issued an Order vacating Playtime and Underwriters' Rule C arrest of the True Dream (an amended order was issued on June 29,

2000, correcting some of the underlying factual findings, but leaving the legal analysis unchanged). Playtime filed an interlocutory appeal to the Eleventh Circuit, Case No. 00–12993–A, on May 31, 2000, which remains pending before that Court at this time.

On August 23, 2000, Ashlar moved for a temporary stay of all proceedings in this case except the pending Eleventh Circuit appeal by Playtime, arguing that disposition of the appeal would impact pending motions before this Court and that some of the litigation in this Court is duplicitous of the issues in another lawsuit currently pending before Judge Seitz, *Ducote v. Ashlar, Ltd.*, Case No. 00–8709–CIV–SEITZ, which involves two buyers who each alleges the right to buy the True Dream. Underwriters, as subrogee of Playtime, Inc., objected to the stay and filed their own Motion for Equitable Relief on August 25, 2000. As part of the motion for equitable relief, Underwriters asked for an order requiring Ashlar to deposit the proceeds from the sale of the True Dream in the court registry or to post a bond. Subsequently, on October 2, 2000, Underwriters moved for leave to amend the complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to add allegations and seek relief against Ashlar pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and asked the Court to issue a writ of attachment for True Dream pursuant to Rule B. These pending matters are now before the Court.

## II. General Standards of Review

### A. Rule B Attachments

■ An attachment under Supplemental Admiralty Rule B is a *quasi in rem* proceeding which permits the assertion of jurisdiction over a defendant's property located within the district even though the court has no *in personam* jurisdiction over the defendant. *Western Bulk Carriers, Pty. Ltd. v. P.S. Internat'l, Ltd.*, 762 F.Supp. 1302, 1305 (S.D.Ohio 1991); *Transamerica Leasing Inc. v. Frota Oceanica E. Amazonica, S.A.*, 1997 WL 834554, *2 (S.D.Ala.1997). Four prerequisites must be met by the plaintiff to secure a writ of attachment: (1) the plaintiff has an *in personam* claim against the defendant; (2) the defendant cannot be found within the district where the action is commenced; (3) property belonging to the defendant is present, or soon will be present, within the district; and (4) there is no statutory or general maritime law proscription to the attachment. *Western Bulk Carriers*, 762 F.Supp. at 1306. When a defendant challenges the validity of a Rule B attachment, the burden is on the plaintiff to prove there was reasonable grounds for issuing the writ. *Salazar v. Atlantic Sun*, 881 F.2d 73, 79 (3rd Cir.1989). The court's inquiry must focus on the facts known at the time of the attachment. *See Western Bulk Carriers*, 762 F.Supp. at 1307.

■ In contrast, Rule C is a true *in rem* proceeding. Access to a proceeding *in rem* under Rule C is restricted to plaintiffs who hold a maritime lien or who can show that "a statute of the United States provides for a maritime action *in rem* or a proceeding analogous thereto." *Sembawang Shipyard, Ltd. v. Charger, Inc.*, 955 F.2d 983, 987 (5th Cir.1992). As noted above, the True Dream was originally arrested under Rule C, but the Court vacated the arrest on May 3, 2000, finding that Playtime and Underwriters could not properly proceed under that authority on the facts of this case.

### B. Motions to Amend the Complaint

■ Federal Rule of Civil Procedure 15 provides, in pertinent part, that "a party may amend the party's pleading only by

leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). Although "[l]eave to amend shall be freely given when justice so requires," a motion to amend may be denied on "numerous grounds" such as "undue delay, undue prejudice to the defendants, and futility of the amendment." *Abramson v. Gonzalez,* 949 F.2d 1567, 1581 (11th Cir.1992).

Furthermore, under Fed.R.Civ.P. 15(c)(2), amendments of pleadings relate back to the date of the original pleading when the claim asserted in the amended pleading arises out of the same conduct, transaction, or occurrence set forth in the original pleading. *See* Fed.R.Civ.P. 15(c)(2).

## III. Discussion

As an initial matter, the Court notes that Underwriters' motion for leave to amend the complaint to add allegations and seek relief against Ashlar pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims and Underwriters' motion for equitable relief seek essentially the same relief, and resolution of the motion for leave to amend the complaint to seek Rule B attachment effectively moots the motion for equitable relief. In both motions, Underwriters seek security because they fear the True Dream will be sold to a third party and that the boat and proceeds of the sale will leave the district and the country, and that thereafter they may be unable to collect on any potential money judgment. Accordingly, in relation to the motion to amend, Underwriters proposes that (1) they be permitted to amend the complaint, (2) the True Dream be attached through judicial order, (3) the court order judicial sale of the vessel for not less than $2.0 million, net, (4) one-half of the proceeds be deposited into the court registry to satisfy Underwriters' *in personam* and *in rem* claims, and (5) the remaining one-half of the sale proceeds be transferred to Toprakbank to satisfy a mortgage agreement between Ashlar and Toprakbank in which the True Dream was designated as security. The motion for equitable relief asks the court to require Ashlar to deposit the proceeds from the sale of the True Dream into the court registry and/or to post a bond as security. In this case, the court has already determined that the Rule C arrest of the True Dream was improper, and the Rule C arrest has been vacated for several months. The Supplemental Rules only permit prejudgment security in certain limited situations, and unless the court determines that the Rule B attachment is properly added to the complaint, requiring prejudgment security would be improper. Furthermore, analysis of both issues are similar, since each requires the court to examine and weigh the interests of justice and prejudice to the parties. Therefore, the merits of the requested amendments to the complaint must be examined.

Technically, the motion for leave to amend the complaint must be granted before attachment of the vessel may be authorized. However, an analysis of whether to allow leave to amend may be interrelated with an examination of whether Underwriters are entitled to Rule B attachment against the True Dream.

The Supreme Court, in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), enunciated the general standard to be employed under Rule 15(a) by the district courts:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice by the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. at 182, 83 S.Ct. at 230.

Underwriters argue that the motion for leave to amend is not the result of bad faith or undue delay, that the amendment will not be futile, that Ashlar will not be prejudiced if the court grants the amendment, and that the proposed amendments further judicial economy and the Court's ability to manage this case. In response, Ashlar argues that allowing Underwriters to amend their complaint at this stage of the proceedings will result in undue prejudice to Ashlar, that the motion was offered after undue delay, that the amendments would be futile, and that Underwriters will not be prejudiced if the amendments are denied. In discussing the propriety of granting leave to amend, Wright & Miller stated that, "[p]erhaps the most important factor listed by the Court and the most frequent reason for denying leave to amend is that the opposing party will be prejudiced if the movant is permitted to alter his pleading." 6 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 1487 (Civil 2d 1990). Such is the case before the Court. Granting Underwriters leave to amend the complaint would unduly prejudice Ashlar and the third parties who have made agreements to purchase the True Dream, and this prejudice is not outweighed by the potential prejudice that Underwriters might experience from being denied the amendments. Because the prejudice factor is dispositive in this case,

it is unnecessary for the Court to address the parties' other arguments in detail.

Although unusual, it is not unprecedented for a court to permit a Rule C arrest to be converted to a Rule B attachment or to allow a complaint to be amended to add Rule B allegations after an arrest under Rule C is found to have been improper. *See, e.g., Sembawang Shipyard, Ltd. v. Charger, Inc.,* 955 F.2d 983 (5th Cir.1992); *Trinidad Foundry and Fabricating, Ltd. v. M/V K.A.S. Camilla,* 966 F.2d 613 (11th Cir.1992); *Heidmar, Inc. v. Anomina Ravennate Di Armamento Sp.A. of Ravenna,* 132 F.3d 264 (5th Cir.1998); *Madredeus Shipping Co. Ltd. v. Century Bridge Chartering Co. Ltd.,* 2000 WL 1205336 (S.D.Fla.2000). A closer analysis of these cases is instructive as to the standards and conditions considered appropriate for granting an amendment or conversion.

In *Sembawang,* a Singapore ship repairer contracted with a Liberian vessel, the Charger, to perform various repairs at its Singapore shipyard. The contract specified that Singapore law governed all aspects of the transaction. After the Charger defaulted, the repairer moved to arrest the vessel pursuant to Rule C, and the vessel was arrested when in port in New Orleans. Three days later, the Charger obtained release of the vessel by posting a bond. A post-seizure hearing was held, followed by further motion practice between the parties. Nine months after the initial arrest, the district court granted the plaintiff's motion to stay the proceedings pending arbitration. Approximately one year later, the arbitrator rendered an award in favor of the plaintiff, and the parties moved in district court to lift the stay. Six months later (over two years after the initial arrest), the district court confirmed the arbitral award and entered judgment for the plaintiff. An appeal followed in which the defendant asked that

the suit be dismissed for lack of jurisdiction and that the bond be vacated.

The Fifth Circuit held that the original Rule C arrest was improper but refused to grant the vessel's motion to dismiss for lack of jurisdiction because it found the repairer could have attached the vessel under Rule B. *Sembawang,* 955 F.2d at 989. Instead, the Court treated the matter as a technical pleading error and allowed the repairer to proceed under Rule B. *Id.* The Court reasoned that it would be manifestly unjust to prevent the plaintiff from collecting a judgment based on a meritorious claim against the bond based on a miscalculation of Singapore law, where the bond had remained in place the entire time and the defendant would not be prejudiced. *Id.*

The Eleventh Circuit stated in *Trinidad Foundry* that it agreed with the *Sembawang* court's reasoning in almost all respects, except for the part of the holding regarding prejudice to the defendant. *See Trinidad Foundry,* 966 F.2d at 618. In *Trinidad Foundry,* just as in *Sembawang,* a foreign repairer contracted with a foreign vessel and, after the vessel owners failed to pay their outstanding balance, the repairer filed an *in rem* action against the vessel and an *in personam* action against the vessel owners. Jurisdiction was asserted under Rule C, and the vessel was arrested. The owners made a special appearance for the sole purpose of challenging the court's *in rem* jurisdiction and filed a motion to dismiss. They also posted a letter of credit and thereby secured the release of the vessel. The Eleventh Circuit affirmed the district court's holding that a Rule C arrest could not be maintained under the applicable law. The Court then went on to analyze the *Sembawang* case, and found that although the plaintiff in *Trinidad Foundry* could have filed an attachment action against the vessel under Rule B, the vessel "would be prejudiced if we allowed [the plaintiff] to proceed under Rule B at this late stage of the litigation." *Trinidad Foundry,* 966 F.2d at 618.

The *Heidmar* case presents a slightly different scenario, although the court relied on the *Sembawang* reasoning. *Heidmar* stemmed from a contract dispute over a time charter agreement, in which the time charterer filed a suit *in rem* against the vessel and *in personam* against the vessel owner seeking, among other remedies, arrest of the vessel pursuant to Rule C. Fifteen minutes after the complaint was filed, the vessel owner appointed an agent for service of process within the federal district in which the case was brought. Without knowledge of the appointment, the district court issued a warrant and the vessel was arrested. The owner then posted bond as security and the vessel was released. Approximately one week after the arrest, the district court ruled that the plaintiff could not proceed against the vessel *in rem* under Rule C. However, the court temporarily converted the arrest into an attachment under Rule B pending further briefing by the parties. The Eleventh Circuit reversed the district court's finding that the attachment was improper, holding that the presence of the vessel owner for attachment purposes is determined at the time the complaint was filed, and that the vessel owner could not be found within the district at that time. The Court allowed the plaintiff to proceed as if it had originally brought the action under Rule B because the vessel owner did not allege that it had suffered any prejudice from the mistake in seeking arrest under Rule C instead of attachment under Rule B. *Heidmar,* 132 F.3d at 268.

In *Madredeus Shipping,* ten days after the complaint was brought alleging a Rule C *in rem* cause of action and the defen-

dant vessel was arrested, the plaintiff sought leave of court to amend the complaint to add a claim under Rule B. As part of its motion, the plaintiff submitted affidavits stating that the celebration of the Chinese New Year in Hong Kong had prevented communication with foreign counsel on issues of English and Hong Kong law, and that the amendments were meant to correct errors in pleading only realized upon hearing foreign counsel's interpretations. This Court granted the amendments, finding that the error in pleading was technical, would not prejudice the vessel owner, and had the potential to cause manifest injustice to the plaintiff. *Madredeus Shipping,* 2000 WL 1205336 at *2. The vessel owner's motion to vacate was then treated as a motion to vacate both the Rule C and Rule B claims, and was subsequently granted by the Court.

None of these cases precisely define the meaning of "prejudice," other than to mention that it can be caused by the late stage of the litigation. *Trinidad Foundry,* 966 F.2d at 618. Underwriters urge the Court to employ a narrow definition of prejudice limited to "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the other party." *Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 (3rd Cir.1969) (permitting an amendment to the pleadings under Fed.R.Civ.P. 15(b)). Underwriters argue that the Court should consider the prejudice Ashlar will suffer as a result of the delay in seeking Rule B attachment, not the prejudice Ashlar will suffer if the True Dream is attached at this time. Ashlar argues that Underwriters' definition is too narrow since the cases cited by Underwriters regarding the standard for prejudice refer to amendments to pleadings that change legal theories, not amendments that result in prejudgment seizure.

Wright and Miller provide some guidance regarding analysis of prejudice when considering a motion for leave to amend the complaint:

> [T]he facts of each case must be examined to determine if the threat of prejudice is sufficient to justify denying leave to amend. In order to reach a decision on this point, the court will consider the position of both parties and the effect the request will have on them. This entails an inquiry into the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted.

6 Wright & Miller, *Federal Practice and Procedure* § 1487 (Civil 2d 1990). Examples of situations in which the court might deem an amendment prejudicial are if the opponent would be required to engage in significant new preparation at a late stage of the proceedings, if the defendant would be put to added expense and the burden of a more complicated and lengthy trial, or if the issues raised by the amendment are remote from the other issues in the case and might confuse or mislead the jury. *Id.* The fact that the amendment might increase the defendant's potential liability is generally not a sufficient reason to deny leave to amend. *Id.* Prejudice to a person who is not a party to the action may also be relevant to the decision whether to grant or deny leave to amend and may be considered by the court. *Id.* The Eleventh Circuit has not stated a definition of prejudice for use in the Rule 15 context, but it appears from *Trinidad Foundry* that the Court took a fairly broad view of prejudice. In that case, the Court found that permitting the plaintiff to change from a Rule C to a Rule B cause of action would prejudice the defendants even though the

challenge to the arrest took place very soon after the case commenced. *Trinidad Foundry*, 966 F.2d at 618. The implication appears to be that the defendants would be prejudiced by the change in theory because they had already exerted significant resources and expenses successfully challenging the Rule C arrest at the district court level and on appeal, and it would be unfair to go back and permit the plaintiff to proceed as if another theory had been asserted all along. With these considerations in mind, the Court turns to the situation in this case.

■ The order of events in this case is important to resolution of the motion for leave to amend. On December 17, 1999, Playtime, Inc., owner of the M. Paradise, and Underwriters, as subrogee of Playtime, Inc., filed suit in this court against the True Dream, *in rem*, and Ashlar Limited, *in personam*. A warrant of arrest was issued, and the True Dream was seized pursuant to Rule C. On January 7, 2000, True Dream and Ashlar Limited filed a motion seeking to vacate the arrest of the True Dream. On April 18, 2000, Ashlar became qualified to do business in the State of Florida and appointed an agent for service of process within the district. On May 3, 2000, this Court vacated the arrest of the True Dream. Ashlar subsequently began trying to sell the damaged True Dream. On May 31, 2000, Underwriters filed notice that they had appealed the order vacating the arrest of the True Dream to the Eleventh Circuit. That appeal is still pending.

On June 6, 2000, Wayne Ducote filed suit in state court against Ashlar alleging that Ashlar's yacht broker had bound Ashlar to an agreement to sell the True Dream to him. That suit was subsequently removed to federal court and is currently pending before Judge Seitz.

On June 20, 2000, Underwriters formally asserted their *in personam* claim against Ashlar by serving Ashlar. On August 25, 2000, Underwriters filed the motion for equitable relief seeking to have the proceeds of the sale of the True Dream placed within the registry of the Court, and on October 2, 2000, Underwriters filed the motion to amend the Complaint to attach the True Dream.

The motion to amend the Complaint to add Rule B allegations, although filed over nine months after the case commenced and five months after the Court vacated the Rule C arrest, was not *per se* untimely, as the Court's previously issued scheduling order had set the deadline for amending the Complaint at October 15, 2001. Underwriters has stated in its pleadings and before the court that the only reason for the delay was that counsel thought the Rule C arrest was sufficient when it filed suit, and that after the arrest was vacated, it took them some time to research the issue and realize that the Rule B attachment might be a viable alternative theory.

In this case, it must be stressed that a number of significant events occurred during the five month period between the issuance of the order vacating the Rule C arrest of the True Dream and Underwriters' filing of their motion to amend complaint to add Rule B allegations. Ashlar has averred that it actively tried to sell the True Dream after it was released from custody. Although a dispute has developed between Ashlar and two other parties, Ducote and Scutti Leasing, over which party has the right to purchase the vessel, it appears that both Ducote and Scutti Leasing think they have a valid agreement and right to purchase the vessel and that, absent any intervening events, the separate pending lawsuit before Judge Seitz will ultimately resolve this issue and the boat will be sold. Furthermore, Ashlar has submitted affidavits and documentation attesting to the fact

that Ashlar and Toprakbank, a Turkish bank, entered into an agreement during this period to satisfy a September 23, 1999 mortgage agreement.[2] *See* attachments to Ashlar's January 5, 2001 Supplemental Memorandum. The September 23, 1999 mortgage agreement between Ashlar and Toprakbank states that the mortgage of the True Dream is security for $3,000,000 in debts incurred by Orhan Asliturk and Can Yatcilik, principals of Ashlar, in connection with the construction of the True Dream. The mortgage agreement requires Ashlar to pay and discharge the debt to Toprakbank in full eighteen months after the date of the agreement, i.e., March 23, 2001, and states that Ashlar will pay Toprakbank one half of the net sale proceeds from the sale of the True Dream or $3,000,000, whichever is less, to settle the debt. According to the declaration of Orhan Asliturk, Ashlar and Toprakbank entered into a supplemental agreement after the Rule C arrest was discharged to permit Ashlar to redeem the mortgage for $1,468,000 if the True Dream could be sold before March 22, 2001.

These intervening events demonstrate that both Ashlar and the potential buyers of the True Dream, Ducote and Scutti Leasing, have relied to their detriment on the fact that the Rule C arrest was vacated and that the True Dream was released from custody during the five months between the order vacating the Rule C arrest and Ashlar's filing of the motion to amend, and that they would be unduly prejudiced if the Court were to allow the Complaint to be amended to permit a Rule B attachment at this late date. The Court cannot ignore the fact that Ashlar agreed to sell the True Dream during the significant delay in bringing the motion to amend and

had agreed to settle the mortgage for a reduced sum, and that the mortgage pay-off amount is about to become due and to convert to $3 million instead of $1.5 million if the Court permits the amendment.

Unlike the situations in *Heidmar* and *Madredeus,* where the issue of conversion of a Rule C to a Rule B claim was addressed simultaneous or very close to the motions to vacate and prior to appeal, in this case the parties and the Court have already expended considerable time and resources deciding the Rule C issue, and the Court's order has been up on appeal for a significant period of time. And unlike *Sembawang, Heidmar,* and *Madredeus,* the arrest in this case cannot simply be converted into a Rule B attachment at the same time the Court decides the propriety of the Rule C arrest. Because of the significant delay on Underwriters' part, the vessel has been released for five months and Ashlar reasonably assumed that, absent reversal of the May 3, 2000 order by the Eleventh Circuit, the vessel was out of custody and could be disposed of as they saw fit.

Underwriters have not demonstrated sufficient prejudice to themselves in the event that the motion to amend is denied so as to override the prejudice Ashlar and the two potential buyers will experience if the amendment is granted. There is no dispute that Ashlar has been properly served in connection with the *in personam* claim and that Ashlar is properly subject to the jurisdiction of this Court. Nothing bars Underwriters from obtaining a money judgment against Ashlar. As noted in *Lloyd Citrus Trucking, Inc. v. Treesweet Products, Inc.,* 655 F.Supp. 385, 387 (S.D.Fla.1987) in the context of an order on a motion for preliminary injunction,

---

**2.** Although Underwriters have questioned the validity of the mortgage agreement, Ashlar has submitted a declaration by English Solicitor Jay Tooker stating that the mortgage is validly executed and duly registered under English law, and Underwriters have not submitted any evidence that refutes these statements.

potential inability to satisfy a judgment by the offending party does not constitute "irreparable harm." Underwriters have not presented any evidence to the Court showing, and the Court has no reason to believe, that a European court would not enforce a judgment against Ashlar and/or the True Dream if a judgment were to be obtained.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendant Ashlar Limited's ("Ashlar") Motion for a Stay of all Proceedings [D.E. 89–1] is DENIED AS MOOT, as the motions for attorney's fees and costs are fully briefed before the Magistrate Judge. Defendant Ashlar's Motion to Extend Time to Respond to Discovery [89–2] is GRANTED, with an extension of time of 30 days from the date of this Order to respond to pending discovery requests. It is further

**ORDERED AND ADJUDGED** that Underwriters' Motion for Equitable Relief [D.E. 95] and Motion for Leave to Amend Complaint [D.E. 114] are DENIED.